# 10-50744

No. 10-50744

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

**KUJOE BONSAFO AGYEI-KODIE**
A072 732 130

Petitioner

v.

**ERIC H. HOLDER, JR., *ET AL*,**
**United States Attorney General,**

Respondents.

---

**APPEAL FROM UNITED STATES DISTRICT COURT FOR THE WESTERN
DISTRICT OF TEXAS, SAN ANTONIO DIVISION, USDC NO. 5: 10-CV-195**

---

**PETITIONER'S OPENING APPELLATE BRIEF FOR APPEAL OF USDC
NO. 5: 10-CV-195**

---

KuJoe Bonsafo Agyei-Kodie                                    **DETAINED**
A72732130P
810 Commerce Street
Karnes City, Texas 78118

i

No. 10-50744

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

### KUJOE BONSAFO AGYEI-KODIE
A072 732 130

Petitioner

v.

### ERIC H. HOLDER, JR., *ET AL*,
### United States Attorney General,

Respondents.

### PETITIONER'S OPENING APPELLATE BRIEF FOR APPEAL OF USDC
### NO. 5: 10-CV-195

Pursuant to Fifth Circuit Rule 28.3(b), Petitioner request oral argument in order to better examine an issue of first impression in this Circuit: Whether a *Pro Se* applicant for habeas corpus must present corroboratory evidence when it is clear that Respondents obtained evidence in record illegally through abuse of court process to support his claim.

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................2

I.    INTRODUCTION ................................................................................4

II.    JURISDICTION & GENERAL STANDARD OF REVIEW ................................5

III.    STATEMENT OF ISSUES ................................................................7

IV.    STATEMENT OF THE CASE ................................................................9

V.    STATEMENT OF THE FACTS ................................................................13

VI.    SUMMARY OF THE ARGUMENT ........................................................25

VII.    ARGUMENT ................................................................................28

A. The District Court erred as a matter of law and facts in granting Respondent motion to dismiss that "Petitioner has provided no facts to support this court's jurisdiction to hear his due process claim or that he is entitled to any relief on his claim" (Docket no. 13 at 11) ................................................................................................28

B. The District Court erred as a matter of careful consideration of facts and law in granting Respondent motion to dismiss pleading that Petitioner is detained pursuant to statutory directive in 8 USC 8 § 1226(c) and that record of conviction was sufficient to satisfy the burden of proof required ........................................32

C. The District Court erred as a matter of law by affirming Respondents attorney's argument that the mandatory detention provision of INA § 236(c), 8 USC § 1226(c), is prescribed to include those charged with removability under section 237(a)(1)(C)(i) of the Act ...................................................................

D. The District Court erred as a matter of law and on factual grounds in granting Respondents' motion to dismiss when Petitioner had proved, at least, a set of facts in support of his claim that would entitle him to relief ......................................38

E. The District Court erred as a matter of law or failed to exercise rationally its discretion or neglected improperly its duty by overly and mechanically misinterpreting statutes and court disposition including docket entries ...............41

VII. CONCLUSION .....................................................................................45

VIII. CERTIFICATE OF SERVICE ................................................................46

IX. CERTIFICATE OF COMPLIANCE ........................................................47

## TABLE OF AUTHORITIES

*Statutory and Regulatory References*

8 CFR Part 236 ..................................................................................35

8 CFR §§ 236.1(c) ..............................................................................35

28 USC § 2241(c)(3) .............................................................4, 7, 27, 37, 41

28 USC § 2254(a) (2000) ...........................................................................4, 7

*Immigration Reform and Control Act*

INA § 245A(a), 8 USC § 1255a(a) (1988) ...............................................................

INA § 101(a)(42), 8 USC § 1101(a)(42) (1988) ........................................................

*Case Law*

Matter of Acosta, 19 I. & N. Dec. 211, 222 (BIA, 1985) ...........................................

Barber v. Gonzales, 347 U.S. 637, 642 (1954) .......................................................

U.S. v. Berrios .......................................................................................................

Brinkerhoff-Faris Trust & Sav. Co. v. Hill ...........................................................

Hebert v. Louisiana .................................................................................................

Dickerson v. United States .......................................................................................

Withrow v. Williams ...............................................................................................

Dunne v. Henman ....................................................................................................

Dameron v. United States ........................................................................................

United States v. Smith .............................................................................................

**No prior appeals have been taken in this matter**.

## I. INTRODUCTION

Petitioner's case is one of the few cases where the respect for a rule of law has been made to corrode in a way more than the government looks beyond the law itself to arbitrary considerations, such as race, religion, or control over the defendant's exercise of his constitutional rights, as the basis for determining its applicability." (See *U.S. v. Berrios*, 501 F.2d 1207 (2nd Cir.1974), at 1209). Thus, the power of correction lies in the American Judicial System. Both the Fifth and Fourteenth Amendments to Constitution of United States requires that federal and state action shall be consistent with fundamental principles of liberty and justice, which lie at basis of all our civil and political institutions. *Hebert v. Louisiana*, 272 US 312, 71 L Ed 270, 47 S Ct 103, 48 ALR 1102 (1926).

Petitioner seeks habeas relief under 28 USC § 2241. That statute provides that the Court may grant habeas relief for persons in custody in violation of the Constitution or laws or treaties of United States. As the law stands, any person who, as a result of action of state or federal government, is subject to restraints not shared by the public generally meet the status jurisdictional requirement in the habeas corpus statute. Petitioner claims assert that his right to substantive and procedural due process guaranteed by the Fifth and Fourteenth Amendments has been violated by Respondents' Abuse of Process, Fraudulent Use of Process, Malicious Act, Wrongful Attachment, Malicious Abuse of Process to unlawfully detain him. In effect, Petitioner challenges the lawfulness of his detention on the ground that it is, or was imposed, in violation of the Constitution or laws or treaties of the United States (see 28 USC §§ 2241(c)(3), 2254(a) (2000)).

Petitioner is in custody because of alleged immigration violation predicated upon void conviction. Petitioner's detention is in violation of privileged against incrimination as it is his

4

due process right not to be detained under void conviction by law (*Dameron v. United States*, 488 F.2d 724 (5th Cir. 1974); *United States v. Tucker*, 404 U.S. 443, 30 L. Ed. 2d 592, 92 S. Ct. 589 (1972)).

Due process requires that action by the government through any of its agencies must be consistent with fundamental principles of liberty and justice. *See Hebert v. Louisiana*, 272 US 312, 71 L Ed 270, 47 S Ct 103, 48 ALR 1102 (1926); *Buchalter v. New York*, 319 US 427, 87 L Ed 1492, 63 S Ct 1129 (1943). The arbitrary action of government officials rises above the level of substantive due process violation, in that it is so egregious or outrageous that it is conscience shocking; government taking the lawfully discarded conviction and representing it as a legitimate issued conviction in order to achieve an objective not legally permitted violates the fundamental principles of liberty and justice which lie at the core of constitutional due process. This perversion of basic human and/or constitutional rights should not be countenanced by any American court. Accordingly, the Court should hear Petitioner's habeas.

The Federal Magistrate's decision should be overturned because denying the petition and affirming the district court decision would result in another miscarriage of justice (*United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994)).

## II. JURISDICTION & GENERAL STANDARD OF REVIEW

Pursuant to 28 USC § 636(c)(3), jurisdiction to review orders and decisions rendered the Magistrate Judge of the District Courts is vested in the United States Courts of Appeal. Pursuant to the Federal Rules of Appellate Procedure encompassing Rules 3 through 12, Petitioner seeks remedies by appealing the decision of the Federal Magistrate Judge. Upon dismissal of his habeas corpus by the District Court on July 13, 2010, and notice of appeal timely prosecuted,

Petitioner's case is now ripe before the Court of Appeals for review. See *Smith v. Barry*, 502 U.S. 244, 245, 116 L. Ed. 2d 678, 112 S. Ct. 678 (1992).

Since a judge in the District Court for the Western District of Texas entered the decision and order of the habeas petition, and in pursuant to 28 USC § 2253(a), the order is subject to review, on appeal, by the Court of Appeals for the circuit in which the order is issued, this Honorable Court has jurisdiction to review Petitioner's appeal. Because Petitioner's claim was initially ruled upon by the District Court for this circuit, and because Petitioner is currently detained at the Karnes County Correction Center in Karnes City, Texas, this Court has jurisdiction over the instant matter.

In defining the appropriate standard of review for orders and decisions, courts have distinguished between conclusions of law and findings of fact. Conclusions of law are generally reviewed *de novo*. *Nguyen v. INS*, 991 F.2d 621, 623 (10th Cir. 1993); see also *Kapcia v. INS*, 944 F.2d 702, 705 (10th Cir. 1991). However, the interpretation of a statute by an agency charged with its enforcement is entitled to deference. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984). Nonetheless, whenever such interpretations are inconsistent with the statutory language or legislative intent, they should be rejected. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 446 n.30 (1987).

In *Dickerson v. United States*, 530 U.S. 428, 439 n.3 (2000), the Supreme Court explicitly acknowledged the tremendous relief available only for claims that a person is in custody in violation of the Constitution or laws or treaties of the United States. "Habeas corpus proceedings are available only for claims that a person 'is in custody in violation of the Constitution or laws or treaties of the United States'" (citing 28 USC §§ 2241(c)(3), 2254(a) (2000). As a consequence, the Court held that "district court had subject-matter jurisdiction

6

because petition filed under 28 USC § 2241 alleged federal question." See also *Withrow v. Williams*, 507 U.S. 680, 715 (1993)

As a further amelioration of the suffering imposed by unlawful detention, the Supreme Court has emboldened constitutional requirement established by Congress to protect individuals from arbitrary action by government—namely, Due process requires that action by the government through any of its agencies must be consistent with fundamental principles of liberty and justice. See *Hebert v. Louisiana*, 272 US 312, 71 L Ed 270, 47 S Ct 103, 48 ALR 1102 (1926); *Buchalter v. New York*, 319 US 427, 87 L Ed 1492, 63 S Ct 1129 (1943). Habeas corpus petition merits even closer scrutiny due to the unimaginable abuse and injustice suffered by Petitioner from a small set of individual public officials and government employees notwithstanding substantial levels of abuse and hardship experienced by Petitioner in detention centers throughout the nation, particularly Pot Isabel Detention Center.

Findings of fact are reviewed for substantial evidence on the record. *See, e.g., Melendez v. United States Dep't of Justice*, 926 F.2d 211, 216-219 (2nd Cir. 1991). Where evidence of record is either absent or inadequate to support particular findings of fact, the findings should be rejected and the matter remanded for development of the record. *See, e.g., Shahandeh-Pey v. INS*, 831 F.2d 1384 (7th Cir. 1987).


**III. STATEMENT OF ISSUES PRESENTED FOR REVIEW**

A. Whether District Court erred in granting Respondent motion to dismiss that "Petitioner has provided no facts to support this court's jurisdiction to hear his due process claim or that he is entitled to any relief on his claim" (Docket no. 13 at 11).

B. Whether District Court erred in granting Respondents motions to dismiss when Petition had proved, at least, a set of facts in support of his claim that would entitle him to relief.

C. Whether District Court erred as a matter of careful consideration of facts and law in granting Respondent motion to dismiss pleading that Petitioner is detained pursuant to statutory directive in 8 USC 8 § 1226(c) and that record of conviction was sufficient to satisfy the burden of proof required and whether mandatory detention statute as applied to Petitioner is unconstitutional.

D. Whether District Court erred as by affirming Respondents attorney's argument that the mandatory detention provision of INA § 236(c), 8 USC § 1226(c), is prescribed to include those charged with removability under INA § 237(a)(1)(C)(i).

E. Whether District Court erred as a matter of law or failed to rationally exercise its discretion or improperly neglected its duty by overly and mechanically misinterpreting statutes and court disposition including docket entries.

F. Whether the state prosecutor exhibited callous and deliberate disregard for the fundamental principles of truth and fairness that underlie the criminal justice system by abusing court process to provide fallible evidence to mandatorily detain Petitioner and whether federal and states official conspiring to detain Petitioner under void conviction is a constitutional and prejudicial flaw requiring the protection of due process.

G. While INA § 236(a) may require detention during pre order removal proceedings of a foreign national, a more imperative maxim for premise is whether mandatorily detaining an individual under void conviction knowingly and willing furnished by the custodian, with the intent to commit unlawful act, violates of the Constitution, laws, or treaties of the United States.

## IV. STATEMENT OF THE CASE

Petitioner, KuJoe Bonsafo Agyei-Kodie, seeks a review of a decision of the District Court for the Western District of Texas, San Antonio Division, dated July 13, 2010, dismissing his habeas corpus to determine the lawfulness of his prolonged and continued detention and denying all relief as moot.

Petitioner, a national of Ghana, lawfully admitted to the United States near New York, New York, in June 1997 (Docket no. 2 at 9, Petitioner's habeas; Docket no. 22 at 9, Memorandum and Decision Order) on a J-1 nonimmigrant visa. Having gained admission into the Eastern University Pre-Med Program, Petitioner's status was changed from J-1 to F-1 student visa in September 1997 (Docket no. 22 at 9).

On or about January 31, 2009, Petitioner ex-girlfriend and her campus police officer boyfriend alleged a complaint, charging Petitioner with Telephone Misuse, and Harassment by Cause of Conduct in the Baltimore City District Court.

On the night of February 8, 2008, the Baltimore County Police spearheaded by Cathy Batton broke into Petitioner's residence with no authoritative permission or consent of Petitioner. There was nobody in the house during the police night invasion. Petitioner contacted the Congressman (Honorable John Sarbanes) of the Maryland 3rd Congressional District to help him launch an investigation into the police misconduct and brutality (Docket no. 2 at 5, ¶ 14).

On or about February 23, 2008, Petitioner was served with arrest warrant by the Baltimore County Police Department charging him with Assault second Degree, Stalking, Telephone Misuse, Sex Offense Fourth Degree, and Harassment by Cause of Conduct in the Baltimore County District Court.

On May 7, 2008, Petitioner went to trial in the Baltimore City District Court, where he was discharged of the case.

On September 15, 2008, Petitioner was detained on the basis of being a danger to himself during trial at Baltimore County District Court. There was no verdict of guilty or innocence because the trail was not complete. Petitioner was not examined by medical expect to determine whether is a danger to himself or not. Petitioner was told he would be informed about the next hearing date.

On November 10, 2008, Petitioner was brought to the District Court for a disposition where no trial was conducted but he was sentenced on all counts concurrently with sentence length of eighteen (18) months. Petitioner appealed his case to the Circuit Court for Baltimore County and was scheduled for a *de novo* trial on February 27, 2009.

Petitioner's *de novo* trial was postponed to May 7, 2009, because the state assigned defense counsel had has a death in her family. On April 23, Petitioner was taken by state for evaluation because Petitioner it was alleged he was not competent to stand trial not criminally responsible for the crimes charged against him since he was not mentally sound the time the charges were filed against him. Petitioner insisted he is competent and did not belong to the mental institution.

On July 15, 2009, Petitioner went to the *de novo* trial at the Circuit Court for Baltimore County, where all charges were thrown out because prosecutor has failed to make out a legal case or bring forward sufficient evidence except the Harassment by Cause of Conduct, which carries a maximum sentence of 90 days (Docket no 2 at 8, ¶¶ 22, 23). Petitioner was given time served and was released. Petitioner has appealed because it was obtained by another unacceptable conduct of prosecutor and defense counsel.

As soon as his release was ordered, Petitioner was "snatched" and sent to the Baltimore County Detention Center, but this time not in a minimum-security general population unit but in a segregated maximum-security single cell. Petitioner was taken into DHS/ICE custody in Baltimore through a detainer, issued on June 23, 2008, with no reference file number (Docket no. 15; Exhibit G) on Friday, July 17, 2009, and held with no bond pending deportation pursuant to INA § 237(a)(1)(C)(i). Petitioner was served with Notice-to-Appear (NTA) at the Baltimore ICE Center and later that day transferred to York County Prisons, PA.

DHS/ICE based the charge on Petitioner's alleged arbitrary dismissal from Towson University in Baltimore County, Maryland, where he was a full-time doctoral candidate and active adjunct professor before his unfortunate ordeal. At the Baltimore ICE processing center, Petitioner's property, including legal documents, were "stolen" by ICE agents.

Even in the February 2008 police report, it was stated that Petitioner "is subject to removal because he is in the United States illegally" (Docket no. 15 at 23, Exhibit C). Petitioner's deportation has been proximately planned by conspiratorial agreement among DHS/ICE agents and police officers for exercising his right to seek protection of the country's laws and constitution from unscrupulous government officials' unfair practices, abuse, and misconduct.

On July 29, 2009, Petitioner was taken to Port Isabel Detention Center at Los Fresnos in Texas, where his removal proceeding began.

On August 12, 2009, Petitioner requested the immigration judge for custody re-determination and one was scheduled for him and denied. Initially, Petitioner was detained without bond, and although a bond re-determination hearing was later held, the Immigration

Judge who presided over that hearing, which lasted barely 5 minutes, denied Petitioner's petition for release based solely on convicted aggravated felony (Docket no. 13, exhibit 3).

On August 12, 2009, Petitioner asked Immigration Judge Howard Achtsam for custody re-determination of the "no bond" and was scheduled on August 26, 2009, which happened to be with Immigration Judge Eleazar Peterson. Judge Peterson further postponed the bond hearing to September 8, 2009, because he has not received the record from the Respondents. September 8, 2009, Judge Peterson did not show up. September 16, 2009, Petitioner sat all the in the courtroom awaiting his hearing but was not called.

September 17, 2009, Petitioner was informed that he would have his individual hearing with Judge Achtsam on that day. When Petitioner got to the courtroom his first question was that why is he having an individual hearing without having a master hearing? The Judge then answered, "if that was the case, it was a mistake." The bond hearing took less than 5 minutes during which the Judge told Petitioner that he would be held with no bond without determining the dangerousness of Petitioner to community or flight risk. Judge then followed with a written order (Docket 13, exhibit 3).

After numerous unsuccessful attempts to secure legal counsel, Petitioner decided to contest on his own the insidious scheme of Respondents by filing a number of motions and freedom of information act requests. Petitioner filed a motion with Judge Achtsam to subpoena Respondents for the information being used to mandate his detention. Immigration Judge Achtsam denied them.

On January 24, 2010, few weeks before his wanton transfer from Port Isabel Detention Center (PIDC) to Karnes County Correctional Center (KCCC) on February 10, 2010, Petitioner initiated a habeas corpus in the United States District Court for Southern District of Texas to

determine the lawfulness of his detention. When Petitioner got to KCCC, he wrote to the District Court for Southern District for a change of address. The Court then replied to tell Petitioner that the Court has no case or petition related to him. Petitioner then resent his habeas to the court for Southern District and then sent one to the District Court for the Western District of Texas as he found out that the Southern District does not have jurisdiction over KCCC where he is currently incarcerated.

On July 13, 2010, the District Court for the Western District of Texas, San Antonio Division dismissed Petitioner habeas corpus and mooted all other relief. Petitioner has taken a timely prosecuted appeal with this Circuit Court of Appeals for the Fifth Circuit as it has jurisdiction to hear his case.

## V. STATEMENT OF THE FACTS

Petitioner is a thirty-five year old man who was admitted into the United States in 1997 as a nonimmigrant visa holder. Petitioner is currently pursuing a doctoral degree in Computer Engineering and Information Sciences at Towson University where he serves as an adjunct professor in Computer and information Sciences (see http://tiger.towson.edu/~kagvei1). Petitioner has diligently pursued his education since his time of admission into the States and has worked as permitted by his visa status. During all this period of studying and working, Petitioner filed personal income taxes.

In September 2005, Petitioner was admitted into the doctoral Engineering Program in Morgan State University, Baltimore, Maryland, specializing in the Digital/Analog Signal Processing and Communication Networks domain specialty of Electrical Engineering. Petitioner moved to Baltimore in March 2006 and met a social work undergraduate senior female student,

Ms. Oluchi Mochaa-Uchefuna. Ms. Mochaa-Uchefuna turned out to be a graduate student in fall 2007 and the two began an intimate relationship.

Although she did not live together with Petitioner during their epoch of intimacy, Ms. Mochaa-Uchefuna spent of her days with Petitioner at his residence at 44 Masthead Court, Essex, MD 21221, especially the weekends. She parked her car at Petitioner's house while he drove her to and from her work, sometimes using her own car. Their friendship was well connected that Petitioner endowed with Ms. Mochaa-Uchefuna a key to his residence enabling her to have full right of entry to the house at any time she deemed apposite. Ms. Mochaa-Uchefuna had expressed great interest in living together with Petitioner but Petitioner did not concur with that idea at the time because he was planning to move to a new place of abode. Meanwhile, Ms. Mochaa-Uchefuna's mother had strongly told her to leave the parents' house for her own place because of their fragile relationship.

Nearly two months after commencement of the intimate relationship, Petitioner learned that Ms. Mochaa-Uchefuna was having an affair with a campus police officer and so Petitioner ended all intimacy with her and took back his apartment keys from her. Following the termination of the relationship, Ms. Mochaa-Uchefuna, together with rivalry campus police instigator, went to the Dean of Graduate School's office where Petitioner was doing his graduate assistantship to allege unfounded complaint, such as taking her information from the Graduate School Records, perhaps to get even with Petitioner. Ms. Mochaa-Uchefuna sought to reestablish cordiality with Petitioner. (See text messages from Ms. Mochaa-Uchefuna).

On November 14, 2008, the night before Petitioner was to meet with the Dean of Graduate School, Dr. Maurice C. Taylor, Ms. Mochaa-Uchefuna came to School of Engineering where she invited Petitioner to have a conversation in her car as usual. Ms. Mochaa-Uchefuna

14

cried regretfully and earnestly apologized to Petitioner that she has been very sorry and feared that Petitioner might lose his assistantship and/or scholarship because of her allegation that Petitioner took her information from the Office of Graduate Studies. She pleaded that Petitioner remained her best friend so that they could continue the warm relationship that has aspired between them. Touched by her declaration of guilt and a gnawing distress resulting from her past wrongs, Petitioner agreed to be friends with her. The two had a lengthy talk for more than three hours and finally settled on what exactly to tell the Dean when Petitioner meets with the Dean the following day. Ms. Mochaa-Uchefuna shrewdly "blackmailed" Petitioner.

Ms. Mochaa-Uchefuna tried to pursue relationship with Petitioner but her relentless effort was to no avail. (See, text messages from Mochaa-Uchefuna). During that time, Petitioner occasionally entertained communication with her through telephone conversations and e-mails. On December 25, 2007, Petitioner sent a flower through 1800-FLOWERS to formally end any form of relationship with his ex-girlfriend. Having ended all form of formal and informal relationships with her, Petitioner decided to ignore her phone calls after the New Year. Ms. Mochaa-Uchefuna started to call from private numbers and Petitioner continued to disregard such private calls. She then decided to call from phones belonging to friends, acquaintances, and co-workers in order that Petitioner may somewhat answer.

On January19, 2008, Ms. Mochaa-Uchefuna called from one of her friend's phone whose number was unknown to Petitioner and requested for a website where she can buy reasonable cheap air-ticket because she has seen Petitioner purchase his plane ticket from that website. Petitioner acknowledged her request but did not send anything to her.

On February 7, 2008, Petitioner received a phone call from the campus police that he was to come to the station to give his account of statement on a pending investigation based on

allegations made by Ms. Mochaa-Uchefuna. The Petition went to the station to give his statement on February 8, 2008. Petitioner residence was intruded and invaded by the Baltimore County Police Department headed by Cathy Batton on that night. Nobody was in the house when the night incursion took place. The police confiscated cell phones, other accessories and computers, including one state-owned laptop belonging to Maryland Department of Transport (MDOT), Technology and Transport Division where Petitioner was working as intern System Engineer and Database Analyst.

Petitioner contacted the Congressman of the Maryland Third Congressional District, Honorable John Sarbanes, to help him launch an investigation into the police misconduct and brutality. Soon after that, the same charges were filed, but including three serious additional counts, with Baltimore County District Court, as the two counts charged in the Baltimore City District Court. Petitioner is utterly convinced he has done nothing wrong and that the alleged charges brought against him were groundless and unsubstantiated in that they were rivalry instigated and conspiratorially retaliatory motivated.

On Saturday, February 23, 2008, at about 3:00 A.M., Baltimore County Police Department served a warrant for Petitioner. Petitioner posted a bail of $25, 000.00 but Cathy Batton submitted an INS warrant believed to have been issued to her by Durye Hassan of ICE. This warrant was found to be a feint and Petitioner was released, February 27, 2008. There was no support for finding of probable cause. Even in the police report it was alleged that Petitioner is illegal in the country and hence is subject to removal.

February 11, 2008, Petitioner informed his supervisor, Ms. Gail Adams, at work and she called the police department to request for the immediate return of one of the laptops they seized because it belonged to the state. Ms. Adams warned Petitioner to be careful with those police

personnel as she, to a certain high extent, suspected a foul play. Soon after his arrest, Cathy Batton and Richard Peacock both of Baltimore County police department called Ms. Gail Adams, to tell her that INS has come for Petitioner for the fact that he was in the country illegally. Ms Adams then sent an email to tell Petitioner not to come to work until he has resolved any and all issues with INS.

The unlawful confiscation of Petitioner's Computers put a deliberate hold on his then ongoing dissertation in Electrical Engineering at Morgan State University. As a result, Petitioner transferred to Towson University (see transfer from Morgan State to Towson University) as a prospective pioneer doctoral Computer Engineering Candidate in Applied Information Sciences, where he was serving as adjunct professor in Computer and Information Sciences Department.

Charges were filed in the Baltimore County District Court (case number 1C00277432). The same case pending concurrently against Petitioner in the Baltimore City District Court was tried on May 7, 2008, under the case number 2B01932058.

On Monday, September 15, 2008, Petitioner went through the mockery of a fixed trial orchestrated by his assigned public defender, Ms. Vanessa C. Vescio. Petitioner was told he would be informed about his next trial date. Petitioner was held without bond on the basis that Petitioner is a danger to himself. Petitioner has no mental problems nor had a psychiatrist or psychologist ever examined him. No history of drug or alcohol use and was not examined by a specialist to verify the Judge's proposition of his (Petitioner) self-endangerment.

While being held on the basis of being a danger to himself, Petitioner wrote to the Chief Administrative Judge of the Circuit Court for Baltimore County, and was brought to appear before a Judge on October 1, 2008. This was done on a "Pro Se" basis because Petitioner's assigned counsel has verbally told him that his case is frivolous and that a habeas corpus is

totally illegal. October 14, 2008, Ms. Vanessa Vescio wrote to Petitioner that based on the facts and circumstances surrounding his case it would be an ethical violation on her part to file a Writ of Habeas Corpus. Besides, she has been instructed not to do so by the deputy public defender, Mr. Donald Zaremba, for Baltimore County. Ms. Vescio in her October 14, 2008, letter informed Petitioner that the Judge thinks he is guilty and that he should be prepared for disposition. Petitioner was taken to the District Court to appear before the presiding Judge on November 10, 2008, where no fact-finding accuracy was sought to avoid erroneous conviction. Instead, privilege of policies was extended to include fabricated information from potentially unreliable abusive source (see Exhibit D, special report from pre-sentence investigation) to pronounce conviction. Ms. Vanessa Vescio presented the falsified pre-sentence report to the Judge, which operated to the prejudice of Petitioner and resulted in imposed verdict of penal confinement.

Weird and unusual things occurred during the trial on Monday, November 10, 2008. In the pre-sentence report, it was alleged that Petitioner has two arrests that are not found in his State RAP Sheet or FBI Record check. Petitioner has no prior criminal history to constitute RAP Sheet or any unlawful activities to elicit FBI interest.

On December 4, 2008, appeared before Judge Patrick Cavanaugh, where Petitioner learned from another public defender (Ms. Coleman) that Ms. Vanessa Vescio had filed a habeas corpus motion on his behalf. Petitioner then withdrew the motion, as it was clearly obvious that this is one of the tactical orchestrations being demonstrated by Ms. Vescio and Ms. Rachel Karceski.

Petitioner's case was then in the appellate court for a de novo trial where he was scheduled to appear in court on February 27, 2009. Three days before the hearing Mr. Zaremba, the deputy public defender, who according to Ms. Vanessa Vescio has instructed that Petitioner

18

case is frivolous, and a lady who introduced herself as Ms. Jerri Peyton-Braden, the new assigned counsel, came to reason with Petitioner to strike a deal so that the hearing would be avoided. Petitioner declined any on going deal insisting that he wants his day in court to ascertain his innocence and as a result, Ms. Jerri Peyton-Braden told Petitioner that he is not ready for the hearing. The court day arrived and Petitioner was taken to the courthouse only to be told by another public defender that the trial would have to be postponed because the assigned public defender, Ms. Jerri Peyton-Braden has had a death in her family. Petitioner insisted the trial goes on but to no avail and was remanded to the detention center later to be informed of the new scheduled trial date of May 7, 2009. On March 29, 2009, Petitioner received a mail dated March 23, 2009, and believed to have come from the Circuit Court for Baltimore County, which states that Petitioner has filed a plea of Not Competent to Stand Trial and Not Criminally Responsible for the charges brought against him by Reason of Insanity. Petitioner did not enter any pleas of such nature and would never do so under any circumstance. Petitioner was, on April 23, 2009, sent to Spring Grove Hospital Center. This was another deliberate deception to postpone the scheduled trial date and a willful attempt to keep Petitioner incarcerated for a long time, if not indefinite.

While in detention at Baltimore County, Petitioner's communication with the outside world was severely hampered. Petitioner wrote numerous letters, including letters to INS, and not a single one of them did he receive a response. Petitioner reported the issue of mail imposture to classification department of the Center and wrote a formal letter to the classification supervisor to help him launch investigation into the matter. Petitioner continued to experience a deliberate and willful deception perpetrated for unlawful gain in the handling of his mail

including mails purported to have come from the U.S. Congress on fake congressional letterhead with no congressional seal in the Center.

While in the Spring Grove Hospital Center, Petitioner communication restriction was lawfully limited and that he was able to contact a private attorney, Mr. Roland Walker of the Law Office of Roland Walker & Marc Zayon, PA, who got hold of Petitioner's unfortunate case to help rectify the situation. Soon after Mr. Walker entered his appearance, all counts of charges were dropped except for two for which Ms. Karceski was asking repeatedly for a plea bargain in order to justify her misconduct. Petitioner demanded all charges plummeted else; he would take any charge to jury trial. On July 15, 2009, Petitioner went to court and requested for a jury trial but Ms. Karceski kept coming at him for almost fifteenth times for a deal but Petitioner insisted for jury trial. Finally, all charges were plunged, an involuntary no suit, on the grounds of factual inaccuracy and procedural defects except for misdemeanor of harassment by a cause of conduct for Mr. Walker promised to help Petitioner appeal in case he needed to do so. The harassment (MD Criminal Law § 3-803) is on appeal (Docket no. 15, Exhibit A). Petitioner has appealed the judgment of guilt on the harassment because he did not understand what took place on July 15, 2009, when his attorney said he would help him to appeal if Petitioner needed to do so. Besides, there was no trial for judgment of guilt but Petitioner is said to have been found guilty.

Petitioner has been subject for the same alleged offense to be twice put in jeopardy of his life. Ms. Karceski in pursuing criminal proceedings against Petitioner in Baltimore County knowing perfectly well that the same case was pending in Baltimore City was engaging in a malicious prosecution. Petitioner has been deprived of his livelihood, liberty, and property without due process of law; He has unduly been denied of his equal protection right of the law. Above all, Petitioner has been forced to be placed in a mental hospital for no reason other than

20

willful deception perpetrated for unlawful gain by Ms. Karceski and her gangs in contravention of his civil and liberty rights. Petitioner knows he is mentally alert, physically strong, intellectually inclined, and has done nothing to be held accountable for these alleged charges, so he insisted he wanted his day in court to prove his innocence. Insidious institution of criminal proceedings, as well as civil process of deportation, for improper purpose with no plausible grounds was designed to quash Petitioner's equal protection rights and/or due process of law. The imperative question at stake is "why would Karceski want Petitioner deported?"

DHS/ICE initiated removal proceedings against him on July 17, 2009, charging that he was subject to removal under section 237(a)(1)(C)(i) of the Immigration and Nationality Act (INA), as a foreign national who has failed to maintain the nonimmigrant status in which he was admitted or to which it was changed under section 248 of the Act or to comply with the condition of any such status (INA § 237(a)(1)(C)(i)). Department of Homeland Security and/or Immigration and Customs Enforcement (DHS/ICE) based the charge on Petitioner's alleged arbitrary dismissal from Towson University in Baltimore County, Maryland, where he is a full-time doctoral candidate and active adjunct professor. The records included purported evidence and twisted facts (Docket no. 15, Exhibit C) that Petitioner has convictions that comport with section 237(a)(2)(A)(iii) of the Act. That Petitioner has FBI related incidents in other states, and several arrests and apprehension to paint a false picture of him. After the commencement of the removal proceedings, DHS/ICE held Petitioner without bond based on the unfounded information supplied by the Assistant State Attorney, Baltimore County, Maryland, Ms. Rachel Karceski, that Petitioner is subject to the mandatory detention provision of section 236(c)(1) of the Act. Petitioner has no convictions that would subject him to mandatory detention under

federal law. He has no prior history of unlawful activities that may elicit the interest of FBI and educe the application of mandatory detention provision.

Petitioner filed a motion requesting the Immigration Judge (IJ) to review custody determination of DHS/ICE. Petitioner requested he should be released on his own recognizance, or alternatively, on a reasonable bond condition, arguing that he is not a convicted foreign national that would subject him to mandatory detention by proper consideration of facts and law. Petitioner had painstakingly compiled documents and substantial evidence to prove his claim that he is not a convicted aggravated felon. He had prepared himself to revisit difficult memories of injustice and abuse he had suffered under a small set of individual public officials in Baltimore County, Maryland.

On September 16, 2009, the IJ presiding over the removal action could not hear Petitioner's request for re-determination of his interim detention due to the fact that the IJ had to adjudicate more than 20 cases. On September 17, 2009, the IJ issued an oral decision in the underlying bond determination hearing that Petitioner should continue to be held without bond. (Docket no. 13, Exhibit 3). INA § 236(c)(1) pertains to convicted aggravated criminals whose detention is strictly mandatory.

On October 11, 2009, Petitioner filed a motion with the IJ to reconsider his bond decision due to grave errors or oversights of information and data gathering in records. The inconsistency in the factual finding in the records might have unintentionally resulted to unsound assessments with serious effects. Misappropriation and abusive source of information may cast doubt on the factual findings and conclusion of the IJ with regard to the law, which could unwittingly lead to flawed decisions with grave consequences. The motion was denied stating that there was no showing of material change in Petitioner's condition. Such an egregious nature to elevate the

foreseeable fictitious information to the level of a deliberate violation or conduct a reasonable officer should know makes a satisfactory showing requirement for material change of Petitioner's circumstance.

On January 13, 2010, Petitioner filed a motion to terminate removal proceedings and release from custody on the grounds of unconstitutionality and failure to follow regulations in obtaining other evidence of deportability and detention. In this contention, Petitioner avers the enforcement of section 237(a)(1)(C)(i) of the Immigration and Nationality Act (INA) against him by DHS/ICE is arbitrary and discriminatory. That he has been improperly singled out for deportation because of his exercise of constitutional rights to challenge and seek protection of the laws and Constitution of the United States from abusive misconduct of the very same people who took oath of office to defend him. He contested that on the ground alleged, while Petitioner is not subject to deportation until after a review and final volition of the University is reached, he is being "haled into" the Immigration Court on an inadequate and prejudicial record in the event the decision of the court is against him. (See Docket no 2, Exhibit K, Motion to Terminate Removal Proceedings). Petitioner is not deportable by law. The underlying disciplinary action was so lacking in fairness or opportunity to be heard so as to constitute a deprivation of due process. It was predicated upon miscarriage of justice and in violation of due process and/or equal protection right of the law.

Petitioner on January 19, 2010 filed a motion with the court for the IJ to issue a subpoena for the production of documents and requested for evidentiary hearing on the merits of the motion to terminate removal proceedings. In the motion to subpoena, Petitioner emphasized that the evidence sought is material and essential to nullify his deliberate incrimination by Ms. Karceski and her gang and the suborning effort of DHS/ICE to paint a false picture of him. He

further contended that the evidence is substantial to justify or obviate his mandatory detention and to assist the court by preventing the infiltration of taint in the records. The evidence is of a substance and critical to the preparation and presentation of Petitioner's proceedings under 8 USC § 1229(a), or INA § 240. Petitioner affirms the information is very vital for the preparation and presentation of his pending motion in light of procedural due process and failure to follow regulations and other associational Constitutional rights.

At the master calendar hearing on January 26, 2010, the IJ made an oral denial decision of the motion for issuance for the production of documents on the basis of the fact that the documents and evidence sought have nothing to do with Petitioner's removal proceedings. The IJ also denied the motion to terminate removal proceedings but did not offer any substantial reason for his decision. The Judge re-scheduled petitioner's master calendar hearing to March 15, 2010, and said nothing about bond hearing. Petitioner is not convicted of any of the offenses postulated at section 236(c) of the Act nor is he subject to any of such designated crimes. A deliberate application of section 236(c) to Petitioner does not implement the purposes of the Act that give impetus to the view of congressional regulations, which may create a number of issues.

Petitioner was wantonly transferred along with sixteen other detainees to Karnes County Correctional Center (KCCC) on February 11, 2010 because they embarked on a peaceful voluntary "moral fasting" to call an end to injustice in detention policies and inhumane immigration laws. The Petitioner was no instigator but voluntarily went without food in protest of his malicious, selective, and discriminatory deportation along with gratuitous detention and legally incorrect means of detention and deportation.

Petitioner was transferred back to PIDC from KCCC on March 11, 2008 for his hearing, which was to be heard on March 15, 2010. The hearing on the scheduled date was cancelled for

no apparent reason known to Petitioner. Petitioner did have his hearing on Wednesday, March 17, 2010 at 2:00 PM where Judge Achtsam could not render a decision but told Petitioner that he will write to Petitioner about his decision. Petitioner was housed in segregated unit all the seven days he was at PIDC and remanded to KCCC awaiting decision from the Immigration Judge. On March 30, 2010, Petitioner received a mail from the Harlingen Immigration Court containing the Judge's decision, dated March 25, 2010, that he finds Petitioner removable and has ordered Petitioner be removed.

## VI. SUMMARY OF ARGUMENT/ISSUES PRESENTED

The District Court erred as a matter of law and factual grounds in granting Respondent motion to dismiss that "Petitioner has provided no facts to support this court's jurisdiction to hear his due process claim or that he is entitled to any relief on his claim" (Docket no. 13 at 11). Where evidence on the record established that Petitioner is being detained under void conviction through malicious abuse of court process (Docket no. 15, Exhibit C) to supply false information, for a purpose, to obtain a result not legally warranted, the Federal Magistrate Judge's conclusion that "[t]the Court finds that respondent's motion to dismiss petitioner's petition for writ of habeas corpus, as amended is **GRANTED** and petitioner's petitioner for writ of habeas corpus is **DISMISSED"** constituted reversible error.

The District Court erred as a matter of careful consideration of facts and law in granting Respondent motion to dismiss pleading that Petitioner is detained pursuant to statutory directive in 8 USC 8 § 1226(c) and that record of conviction was sufficient to satisfy the burden of proof required. The record does not support the Federal Magistrate Judge's conclusion that Petitioner has been convicted of six offenses in Baltimore County and her inability to follow thoroughly

through court documentation was prejudicial and reversible error (Docket no. 22 at 14, footnote 65). Where record vividly shoes Petitioner's District Court of Baltimore County's case was appealed to the Circuit Court for Baltimore (Docket no. 15, Exhibit A at 4 ("criminal appeal from district court"), and give the malicious nature of the state prosecutor's to immigration court (Docket no. 15, Exhibit C at 000184-87), the Federal Magistrate Judge's conclusion that Petitioner has been convicted of six offenses in Baltimore County, tying him to having been convicted to aggravated felony, constitutes a reversible error.

The District Court erred as a matter of law by affirming Respondents attorney's argument that the mandatory detention provision of INA § 236(c), 8 USC § 1226(c), is prescribed to include those charged with removability of section 237(a)(1)(C)(i) of the Act. A foreign national who is deportable or inadmissible by reason of having committed a criminal offense may be subject to mandatory DHS/ICE detention after release from criminal custody, i.e., detention without any statutory right to seek release on bond, pending completion of removal proceedings. See INA § 236(c), added by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRAIRA). Although Petitioner was released from a non-DHS custody, his state detention was due to unacceptable conduct of a handful of state officials—just as what like what is happening in the instant case. Respondents erred by arbitrarily applying the mandatory detention provision Petitioner without taking evidence on this issue (*see United States v. Falk*, 479 F.2d 616 (7th Cir. 1973)). Congress is clearly concerned with detaining non-citizens who are convicted aggravated criminals under federal law or who are currently in penal confinement for criminal offense but not wrongfully detained individuals such as Petitioner.

The District Court erred as a matter of law and on factual grounds in granting Respondents' motion to dismiss when Petitioner had proved, at least, a set of facts in support of

his claim that would entitle him to relief. To the extent that Respondents have abused and violated Petitioner's rights and continue to detain him based on void conviction and fraudulent use of court process, the Federal Magistrate Judge's to dismiss Petitioner's habeas is inconsistent with federal statute of 28 USC § 2241. Petitioner is Respondents' custody, which only rose from their arbitrary actions Abuse of Process, Fraudulent use of Process, Wrongful Attachment, Malicious Abuse of Process, and the arbitrary procedure used by DHS/ICE in obtaining evidence for detention and deportation was in violation of Petitioner's right of due process. Where record clearly indicates that DHS/ICE personnel were in agreement with state officials to accomplish together a criminal or unlawful act or to achieve by criminal or unlawful means an act not in itself criminal or unlawful, and with the intent to obtain a result by criminal means which gravely violates Petitioner's constitutional rights, the Federal Magistrate Judge's decision to dismiss Petitioner habeas corpus is prejudicial and constitutes a reversible error.

The District Court erred as a matter of law or failed to exercise rationally its discretion or neglected improperly its duty by overly and mechanically misinterpreting statutes and court disposition including docket entries. Despite the state prosecutor's letter of malicious nature clearly confirming her abuse of process and criminal act in providing potentially untrue information, aiming at painting black a depressing false image of Petitioner and in spite of all the clear evidence of court disposition including docket entries, demonstrating Petitioner's discharge of the alleged offenses, the Federal Magistrate Judge failed in her duty to make pertinent inquiries consistent with the true. The judge's duty is essentially to see that there is no miscarriage of justice. A district judge has wide discretion in determining to factors such as the "flagrancy and nature" evidence. The Magistrate Judge under the delegation of the District Judge has the discretion to consider such issues as abuse of process, malicious prosecution, fraudulent

use of process, and potentially materially untrue information. Where there is substantial evidence introduced at pleading to support the determination that Petitioner was the victim of government arbitrary action of abuse, the decision to grant Respondents' motion to dismiss for failure to state a claim may be an abuse of discretion, negligence of duty and constitute a reversible error.

## VII. ARGUMENT

**A. The District Court erred as a matter of law in granting Respondent motion to dismiss that "Petitioner has provided no facts to support this court's jurisdiction to hear his due process claim or that he is entitled to any relief on his claim" (Docket no. 13 at 11).**

1. *Standard of Review*

The Fifth Amendment's due process clause also protects against government action infringing fundament liberty interests, no matter what process is provided, where the infringement is not narrowly tailored to serve a compelling state interest. *See Reno v. Flores*, 507 U.S. 292, at 301-302 (1993). This fundamental or substantive due process "prevents the government from engaging in conduct that 'shocks the conscience,' or interferes with rights 'implicit in the concept of liberty.'" *United States v. Salerno*, 481 U.S. 739, 746 (1987), quoting *Rochin v. California*, 342 U.S. 165, 172 (1952). As the Supreme Court recently stated: "This Constitutional concern, itself harkening back to the Magna Carta, arises out of the basic unfairness of depriving citizens of life, liberty, or property, through the application, not of law and legal processes, but of arbitrary coercion." *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 587 (1996). Legislation imposing disproportionate penalties affecting liberty or property interests may be challenged under substantive due process notions. *Id.*

2. *Petitioner's Fifth Amendment Claim is Meritorious*

The Fifth Amendment's due process clause protects against federal government deprivation of life, liberty, or property without fair and adequate procedures.

### a. Procedural Due Process Claim

Petitioner's procedural due process complaint is premised on his allegation that Respondents (Dyrue Hassan, Eloy Huerta, Scott Beemar, Joseph Duda, etc.) in conspiracy with Maryland State Attorney (Rachel Karceski) knowingly and voluntarily submitted a false affidavit in the context of Petitioner's removal proceedings and detention. The Court acknowledges (Docket no. 22 at 14, footnote 65; Docket no. 15, Exhibit A and Exhibit C at 000184-87) and Respondents concede that Petitioner sufficiently alleges that ICE was involved in tortuous activity in Maryland. "[W]hen a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum, the State is exercising 'specific jurisdiction' over the defendant." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984); accord *Hyatt*, 302 F.3d at 713 (describing specific jurisdiction as that which covers "controversies that arise out of or are related to the defendant's forum contacts"). Because Respondent, Dyrue Hassan sent her affidavit to an Immigration Judge in Los Fresnos, specific jurisdiction exists here and thus personal jurisdiction concerns do not impede Petitioner's procedural due process complaint.

Respondents also argue that Petitioner's procedural due process claim should be dismissed because "Petitioner's due process claim lacks merit" (Docket 22 at 11; Docket 13 at 10) and he has no constitutionally protected liberty interest to be free from detention pending removal proceedings because his "pre order detention is mandatory based on his convictions" (Docket no 13 at 11). Respondents further state "here, Petitioner can show no denial of any due process rights that available to him." The Government distilled this line of reasoning by arguing:

"[b]ecause Petitioner had an opportunity to go before an IJ to present his case and that request was denied, the inaccurate statements contained in ICE's affidavit and abuse of court process could not have violated Petitioner's due process rights." The Government also argues that "the Attorney General's decisions to deny bail pending removal proceedings are entirely discretionary." As a result, the Government continues, "Petitioner cannot base any due process rights on discretionary decisions to deny him bond and detain him during removal proceedings."

### b. Substantive Due Process Claim

The substantive due process requirement of the Fifth Amendment prohibits the government from subjecting persons to preventative detention for a potentially indefinite period. See United States v. Salerno, 481 U.S. 739, 746 (1987). Substantive due process bars arbitrary, wrongful government actions regardless of the fairness of the procedural used to implement them (*Marco Outdoor Advertising, Inc. v. Regional Transit Authority*, 489 F.3d 669, 672 n.3 (5th Cir. 2007). A detention, which only flows out of Respondents' unconstitutional act of abuse of process, malicious prosecution, malicious attachments, malicious perversion of a regularly issued civil action and conspiracy does not satisfy the substantive due process requirement. Furthermore, civil detention must be narrowly drawn to serve a legitimate and compelling governmental interest, such as ensuring that detainees if released will not present a danger to the community or abscond from future immigration proceedings. See *Zadvydas*, 533 U.S. at 690-91; *Salerno*, 481 U.S. at 747. Petitioner is not a member of a class whose removal enforcement has been given high priority, but for unacceptable conduct of Respondent, and detention of such person does not serve the legitimate and compelling interest of government. Because the government had held that Petitioner is ineligible for release due to his conviction as a matter of law while Petitioner has no convictions by law and facts, Petitioner's confinement is

unauthorized by law in violation of his substantive due process. To the extent Petitioner alleges unconstitutional act of abuse of process, malicious prosecution, malicious attachments, malicious perversion of a regularly issued perverse actions and conspiracy (Docket no. 15; Exhibit B, Exhibit C, and Exhibit G) that Government committed the District could not discern a substantive due process violation. The inappropriate and tortuous use of a legitimately or illegitimately issued court process to obtain a result that is either unlawful or beyond the process' scope by Respondents and their State counterparts, abridges the Fifth and Fourteenth Amendments to the United States Constitution. It would be unfair at this stage to allow the Government to breach its laws, and then take advantage of its own deception and the fraudulent behavior and misconduct. Both federal and State constitutions contain requirements for due process. To permit the Respondents to substitute prosecutorial misconduct, abuse of process, malicious perversion and deception for honor is a denial of due process of law.

At bottom, Respondents seem to be arguing that since Petitioner did not have a general right to be free from detention, the Government could lawfully go to any and all lengths to keep him locked up. These arguments contradict basic notions of fairness and, if pushed to their limits, would turn immigration proceedings into mere kangaroo courts. The District Court erred as a matter of law in granting Respondent motion to dismiss that "Petitioner has provided no facts to support this court's jurisdiction to hear his due process claim or that he is entitled to any relief on his claim" (Docket no. 13 at 11). Where evidence on the record established that Petitioner is being detained under void conviction through malicious abuse of court process (Docket no. 15, Exhibit C) to supply false information, for a purpose, to obtain a result not legally warranted, the Federal Magistrate Judge's conclusion that "[t]the Court finds that respondent's motion to

dismiss petitioner's petition for writ of habeas corpus, as amended is **GRANTED** and

petitioner's petitioner for writ of habeas corpus is **DISMISSED"** constituted reversible error.

**B. The District Court erred as a matter of careful consideration of facts and law in granting Respondent motion to dismiss pleading that Petitioner is detained pursuant to statutory directive in 8 USC 8 § 1226(c) and that record of conviction was sufficient to satisfy the burden of proof required.**

1. *Standard of Review*

If a prior conviction is void *ab initio* because of a constitutional defect it cannot be used

to enhance punishment under a recidivist statute, *Burgett v. Texas*, 389 U.S. 109, 19 L. Ed. 2d

319, 88 S. Ct. 258 (1967), nor to influence the imposition {554 F.2d 89} of sentence, *United*

*States v. Tucker*, 404 U.S. 443, 30 L. Ed. 2d 592, 92 S. Ct. 589 (1972), nor to impeach the

credibility of a defendant at his trial, *Loper v. Beto*, 405 U.S. 473, 31 L. Ed. 2d 374, 92 S. Ct.

1014 (1972). We would also agree that if a defendant can show that his prior conviction was void

*ab initio*, rather than voidable, such conviction cannot be used to supply the necessary element of

a conviction of a prior felony in a trial for a subsequent federal firearms violation. *Dameron v.*

*United States*, 488 F.2d 724 (5th Cir. 1974).

2. *A Void Conviction May not be Used as a Basis for Mandatory Detention and Such is a*
*Constitutional Flaw Requiring the Protection of Due Process*

The issue is framed in this way because INA § 236(c)(1) is ambiguous on this point as it

being mechanically overly applied to Petitioner. Section 236 of the Act governs the apprehension

and detention of foreign nationals in removal proceedings. For most criminal and terrorist

foreign nationals, including those who are deportable under section 237(a)(2)(A)(ii), (A)(iii),

detention pending a decision on their repatriation is mandatory. INA § 236(c)(1) provides that

the Attorney General "shall take into custody" foreign nationals deportable or inadmissible under the designated grounds including those convicted of an aggravated felony. The statute at section 236(c)(2) stipulates that the Attorney General may release a foreign nationals described in paragraph (1) only if the Attorney decides "that they fall within the narrow exception created by that section to protect witnesses cooperating in certain major criminal investigations." (See 236(c)(2) of the Act). The restriction on bond for aggravated felons are activated only if the non-citizen was convicted making the particular offense an aggravated felony (see *Matter of A—A—*, 20 I. & N. Dec. 492, 10 Immigr. Rep. B1-27 (BIA 1992). Moreover, at least, one court has held that the bond restrictions apply only if the foreign national was charged as an aggravated felon in the Notice-to-Appear (NTA) (see *Probert v. INS*, 954 F.2d 1253 (6th Cir. 1992) but *Probert* may not be controlling here since the government attorney argues because Petitioner was given a bond hearing his due process requirement was satisfied (docket no.17 at 5). However, it is exigent to note that Petitioner has not been charged of removability specified in section 236(c)(1) of the Act (*Matter of Joseph* at 799, 20 Immigr. Rep. B1-217 (BIA 1999)) and that he is statutorily not one of those non-citizens under mandatory detention as argued by the government attorney that the mandatory detention provisional statute is prescribed to include those who are removable pursuant to section 237(a)(1)(C)(1) of the Act. (See docket no. 17 at 4).

The phrase, "convicted of an aggravated felony," could be read as requiring that the crime be defined as an aggravated felony at the time of the conviction. Thus, INA § 236(c)(1) standing alone as seen in this case is ambiguous as to whether it may be applied abusively to detain an individual with no meaningful and substantial conviction. The language that implies congressional authorization to apply the statute comes from the definition of conviction contained in INA § 101(a)(48)(A), 8 USC § 1101(a)(48)(A), set forth by the nation's current

immigration law as "conviction" to be "a formal adjudication of guilt of the alien entered by a court [.]" (See INA § 101(a)(48)(A), 8 USC § 1101(a)(48)(A)). In his January 18, 2005 opinion on what constitutes a conviction for immigration purposes, Attorney General John Ashcroft stated: "This definition, though broad, is clearly not intended to encompass convictions that have been formally entered but subsequently reversed on appeal or in a collateral proceeding for reasons pertaining to the factual basis for, or procedural validity of, the underlying judgment. (*Cf. In re* P-, 9 I. & N. Dec. 293 (A.G. 1961)) (concluding that conviction set aside pursuant to writ of *coram nobis* for a constitutional defect could not serve as basis for order of deportation)" (LexisNexis CD INS and DOJ Legal Opinions § 05-1).

The Black's Law Dictionary defines *Nolle Prosequi* as court's dismissal of a case or of a defendant because the prosecutor has failed to make out a legal case or bring forward sufficient evidence. The same lexicon describes *de novo* trial as a new trial on the entire case—that is, on both questions of fact and issues of law—conducted as if there had been no trial in the first instance. If these definitions apply in the American Justice System—which they, of course, do— then the District court trial has no substance in itself—the verdict is void and cannot be used both by law and facts. It is an absolute wrong, if not a criminal activity, to officially or ostensibly use the discarded and invalidated record against Petitioner to achieve a result not contemplated by law.

DHS/ICE, agreeing with a state official to commit unlawful act—namely, to detain a lawful resident under a void conviction that abridges privileges or immunities of a person in the United States, was engaging in malicious enforcement in violation of the Fourteenth Amendment associational rights of the Constitution. Because the government had held that Petitioner is statutorily ineligible for release due to his conviction as a matter of law while Petitioner has no

convictions by law and facts, Petitioner's confinement is unauthorized by law and is in violation of the Constitution. Since the DHS/ICE had engaged in an unlawful conduct, to wit: agreeing with state officials to accomplish together a criminal or unlawful act or to achieve by criminal or unlawful means to detain Petitioner, Respondents action is in violation with due process of law that requires that "federal and state action shall be consistent with fundamental principles of liberty and justice" *Hebert v. Louisiana*, 272 US 312, 71 L Ed 270, 47 S Ct 103, 48 ALR 1102 (1926). Accordingly, the Court has jurisdiction in the subject matter (*See Alvarado De Rodriguez v. Holder*, 585 F.3d 227, 2009 U.S. App. LEXIS 22363 (5th Cir. 2009)).

The pertinent language of 8 CFR § 236.1(c) constitutes a clear application to convicted foreign nationals (docket no. 13, Exh.4), and admits no exception (*see Connecticut Nat'l Bank v. Germain*, 117 L. Ed.2d 391, 112 S. Ct. 1149 (1992)) ("courts must presume that a legislature says in a statute what it means and means what it says there") (collecting cases). Since Petitioner is detained under void conviction not authorized by law his detention is in complete violation of the Constitution, laws or treaties of the United States. The detention of a non-criminal foreign national on the basis of a void conviction not authorized by law but as to the suitability of particular custodians may implicate a strong concern at the very core of the Due Process Clause—the constitutionally protected interest in freedom from imprisonment.

The circumstances covered by 8 CFR 236.1(c) of the proposed rule uniformly present compelling indicia of flight risk and danger to the community. First, to be subject to section 236(c)(1) of the Act, a foreign national must have a serious criminal conviction constituting a basis for removal from the United States. (Indeed, not all crimes constituting grounds for removal trigger the INA § 236(c)). Second, in order to be subject to mandatory detention, a permanent resident and/or a lawfully admitted resident must either (1) be inadmissible by reason

35

of having committed any offense covered in section 212(a)(2); (2) be deportable by reason of having committed any offense covered in section 237(a)(2)(A)(ii), (A)(iii), (B), (C), or (D); (3) be deportable under section 237(a)(2)(A)(i) on the basis of an offense for which the alien has been sentence to a term of imprisonment of at least 1 year; (4) be inadmissible under section 212(a)(3)(B) or deportable under section 237(a)(4)(B); or above all, have been convicted of one of the crimes specified as aggravated felony under federal law. The specified crimes include murder, rape, sexual abuse of a minor, trafficking in firearms, explosives, or destructive devices, certain other explosive materials offenses, kidnapping, extortion, child pornography, selling or buying of children, slavery, treason, sabotage, disclosing classified information, and revealing the identity of undercover agents.

The issue boils down to whether a conviction that had been formally entered but subsequently reversed on appeal or in a collateral proceeding for reasons pertaining to the factual basis for, or procedural validity of, the underlying judgment provide a sufficiently clear expression of congressional intent to detain an individual based on such void conviction as required under established Supreme Court jurisprudence. Stated alternatively, an individual who was not deportable as a result of a conviction should not become convicted aggravated felon by the mere reclassification of a crime he has not been convicted of by fraudulent use of court process. The question to be asked is "whether detaining a person under void conviction through fraudulent use of legitimately and/or illegitimately issued court process violates due process."

Because majority of Courts holds that the constitutional validity of a judgment that has been reverse based on factual grounds and constitutional defects may not be put in issue (*Pasterchik v. United States*, 466 F.2d 1367 (9th Cir. 1972); *United States v. Lufman*, 457 F.2d 165 (7th Cir. 1972); *McHenry v. California*, 447 F.2d 470 (9th Cir. 1971); *United States v.*

36

*Thoresen*, 428 F.2d 654 (9th Cir. 1970); and *United States v. DuShane*, 435 F.2d 187 (2nd Cir. 1970)) ("Thus it has been the government's position from the start, a position not changed before the Court in banc, that a constitutionally void conviction could not be used to supply an element of the offense of a federal firearms violation") in a federal mandatory detention provision it does reach the question of burden of proof on that issue. Since there would be no implication under INS § 236(c) (1) or § 240 in the absence of a valid conviction, proof of such a conviction is an element of Petitioner's case. That element can ordinarily be satisfied by "proper" evidence of the record of alleged prior convictions. But where, as here, the validity of that void conviction has been put in issue through fraudulent use of court process, the burden shifts to Respondents to provide legitimate evidence that it was not invalid on the grounds that have been put in issue. The precise issue of the standard of proof that government must meet, however, has heretofore been the provision of a certified record of final disposition from the trial court (Docket no. 15 22, Exhibit A). For example, in federal criminal trials the government may rely on the presumption of sanity until the "defense" of insanity has been raised. Then it must prove a defendant's mental capacity beyond a reasonable doubt (*Government of the Virgin Islands v. Bellott*, 495 F.2d 1393 (3rd Cir. 1974)). A holding that, after raising the issue of the invalidity of a prior conviction, offering legitimate evidence and elucidating the fraudulent abuse of process which implicated such invalidity Petitioner had to remain detained amidst such egregious constitutional violation, would be a significant departure from settled principles of federal criminal law. There is no evidence that Congress intended such a new departure in the habeas corpus statutory provision, 28 USC § 2241. Since in this case DHS/ICE conspires with state officials to detain a person on a void conviction and chooses to rest its case without any effort to establish the validity of the state court conviction on which it relies, and the validity having properly been proved by the

individual and DHS/ICE continues to incarcerate the individual implicates serious constitutional concerns.

The continued detention of Petitioner is unlawful and wholly unconstitutional. The fact that a person could be detained capriciously based on unlawful acts of government officials had never been used as grounds for jurisprudence that be made likely pursuant to mandatory detention claim. Up till this point in time, government arbitrary action to detain a person without justification or through fraudulent use of a process, the jurisprudence has been declaratory injunction by federal habeas court to release the person, and not to hold. To continue to hold Petitioner in custody would sharply alter the due process requirement that action by government through any of its agencies must be consistent with the fundamental principles of liberty and justice. *See Hebert v. Louisiana*, 272 US 312, 71 L Ed 270, 47 S Ct 103, 48 ALR 1102 (1926); *Buchalter v. New York*, 319 US 427, 87 L Ed 1492, 63 S Ct 1129 (1943).

**D. The District Court erred as a matter of law and on factual grounds in granting Respondents' motion to dismiss when Petitioner had proved, at least, a set of facts in support of his claim that would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).**

1. *Standard of Review*

A motion to dismiss tests the sufficiency of a complaint, not the merits of a case. *Autry v. Northwest Premium Servs., Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998). Motion to dismiss should be granted only if Plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). Furthermore, all well-pleaded factual allegations in the complaint are accepted as true, drawing all reasonable inferences from those facts in Plaintiff's favor. *Cleveland v. Rotman*, 297 F.3d

569, 571 (7th Cir. 2002). That said, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007) (internal citations and quotations omitted). The motion should be granted only if "no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984).

2. *"Attorney General's discretionary decision regarding the detention of aliens in removal proceedings are not subject to judicial review of his discretionary judgment" (Docket no. 22 at 11; Docket no 13 at 9-11). See also 8 USC § 1226(e)*

Respondents argue that this subsection bars Petitioner's Fifth Amendment claim because "it constitutes a challenge to the government's discretionary decision to deny bail to an alien pending removal proceedings." However, the incidents Petitioner complains of can hardly be characterized as within the discretion of the Attorney General. Petitioner alleges that he was subjected to material and psychological abuse; his detention is unconstitutional because he is detained under void conviction. He also alleges that officials knowingly supplied false information in order to prolong his detention (abuse of process, malicious attachment, etc.). These are not the sorts of discretionary actions Congress sought to shield from judicial review. As the Ninth Circuit stated, "decisions that violate the Constitution cannot be 'discretionary,' so claims of constitutional violations are not barred by § 1252(a)(2)(B)." *Kwai Fun Wong v. United States*, 373 F.3d 952, 963 (9th Cir. 2004) (citing Torres-Aguilar v. INS, 246 F.3d 1267, 1270 (9th Cir. 2001); *Sanchez-Cruz v. INS*, 255 F.3d 775, 779 (9th Cir. 2001)).

3. *Petitioner Administrative Exhaustion Not Required*

The government contests that "Petitioner failed to exhaust his administrative remedies by not appealing the bond decision" (Docket no. 13 at 11). Petitioner asserts that the issues raised in his habeas do not require expertise of the agency and that the agency lacks jurisdictional authority over the subject matter (see Van Eeton v. Beebe, 49 F. Supp. 2d 1186 (D. Or. 1999) (without requiring exhaustion, district judge granted habeas so petitioner could pursue constitutional appeals while administrative appeals were still pending). See also Sundar v. INS, 328 F.3d 1320, 1325 (11th Cir. 2003) (failure to appeal to the BIA constitutes failure to exhaust administrative remedies, but some constitutional claims do not require exhaustion if the BIA does not have the power to adjudicate them); Liu v. Waters, 55 F.3d 421, 426 (9th Cir. 1995); Camara v. Comfort, 235 F. Supp. 2d 1174, 1177 (D. Colo. 2002). Furthermore, to the extent that Respondents' discussion of Lee v. Gonzales, 410 F.3d 778, 786, (5th Cir. 2005), is intended to extend the exhaustion argument to Petitioner's constitutional claims regarding his mandatory detention, such exhaustion is excused by the BIA's lack of authority to adjudicate constitutional questions of due process and/or equal protection of law .See Ashley v. Ridge, 288 F. Supp. 2d 662, 666-67 (D.N.J. 2003) (stating that "[t]he Immigration Court and Board of Immigration Appeals are courts of limited jurisdiction that cannot consider constitutional claims" and that, therefore, "it would undoubtedly be futile to await further administrative hearings when those proceedings cannot in any way address the constitutional claims at issue in this case").

The District Court erred as a matter of law and on factual grounds in granting Respondents' motion to dismiss when Petitioner had proved, at least, a set of facts in support of his claim that would entitle him to relief. To the extent that Respondents have abused and violated Petitioner's rights and continue to detain him based on void conviction and fraudulent

use of court process, the Federal Magistrate Judge's to dismiss Petitioner's habeas is inconsistent with federal statute of 28 USC § 2241. Petitioner is Respondents' custody, which only rose from their arbitrary actions Abuse of Process, Fraudulent use of Process, Wrongful Attachment, Malicious Abuse of Process, and the arbitrary procedure used by DHS/ICE in obtaining evidence for detention and deportation was in violation of Petitioner's right of due process. Where record clearly indicates that DHS/ICE personnel were in agreement with state officials to accomplish together a criminal or unlawful act or to achieve by criminal or unlawful means an act not in itself criminal or unlawful, and with the intent to obtain a result by criminal means which gravely violates Petitioner's constitutional rights, the Federal Magistrate Judge's decision to dismiss Petitioner habeas corpus is prejudicial and constitutes a reversible error.

**E. The District Court erred as a matter of law or failed to exercise rationally its discretion or neglected improperly its duty by overly and mechanically misinterpreting statutes and court disposition including docket entries. (Docket No. 22 at 22-31)**

1. *Standard of Review*

Findings of fact are reviewed for substantial evidence on the record. *See, e.g., Melendez v. United States Dep't of Justice,* 926 F.2d 211, 216-219 (2nd Cir. 1991). Where evidence of record is either absent or inadequate to support particular findings of fact, the findings should be rejected and the matter remanded for development of the record. *See, e.g., Shahandeh-Pey v. INS,* 831 F.2d 1384 (7th Cir. 1987); *United States v Watson,* 466 F.2d 549 (1972, CA5 Fla) ("It is even the judge's duty to make pertinent inquiries when it becomes necessary to bring out matters that have been insufficiently or confusingly developed by counsel.")

2. *The Federal Magistrate Judge Erred or Neglected its Duty or Abuse its Discretion in Its Analysis of Petitioner Habeas Corpus*

## Federal Magistrate Judge's Analysis Petitioner's Convictions

The Federal Magistrate Judge in her analysis appears to portray the idea that records show Petitioner has two different cases—one in the District Court and the other in Circuit Court—both of which resulted in conviction (Docket no. 22 at 25, footnote 115). Petitioner completely objects to that conclusion on both factual and legal grounds. The same case in the district court proceeded to the circuit court for a *de novo* trial (*Dawson v. Mitchell*, supra, 561 F.3d at 933) ("*De novo* review means that the reviewing court 'do[es] not defer to the lower court's ruling but freely consider[s] the matter anew, as if no decision had been rendered below.'"); *United States v. Koenig*, 912 F.2d 1190, 1191–93 (9th Cir. 1990) (describing de novo review in context of pretrial detention determination).

The Black's Law Dictionary defines *Nolle Prosequi (NP)* as court's dismissal of a case or of a defendant because the prosecutor has failed to make out a legal case or bring forward sufficient evidence. The same lexicon describes *de novo* trial as a new trial on the entire case—that is, on both questions of fact and issues of law—conducted as if there had been no trial in the first instance. If these definitions apply in the American Justice System—which they, of course, do—then the District court trial has no substance in itself (the verdict is void) and the charges rendered *NP* (Docket no. 15, Exhibit A) cannot be used both by law and facts as court's verdict of guilt (see *Greathouse v. State*, 5 Md. App. 675, 249 A.2d 207, cert. Denied, 253 Md. 743 (1969) (terminated by *nolle prosequi* or order dismissing indictment)). It is an absolute wrong, if not a criminal activity, to officially or ostensibly use the discarded and invalidated record against Petitioner to achieve a result not contemplated by law—namely, mandatory detained him.

The state prosecutor (Ms. Karceski), in conspiratorial concurrence with ICE, has, therefore, made hitherto another illegal, improper, or perverted use of judicial process just as she

and her bunch of "hoodlums" have been doing throughout the entire adversary process. This malicious perversion of a regularly issued civil and/or criminal process, for a purpose, and to obtain a result not lawfully warranted is inconsistent with the core American values and at odds with principles of the criminal justice system. Ms. Karceski has taken the record of the District Court case (1C00277432) (that is void) and placed on them Circuit Court case number (03-K-09-000163 which is a *de novo* trial version of the district court case on appeal) with the court's certification and seal (Docket no. 15, Exhibit C) indicating that Petitioner was found guilty of all charges in the Circuit Court. This kind of government misconduct is absolutely not tolerated in the United State judicial system as it is against Petitioner's due process right not to be detained on the basis of a void conviction unauthorized by law.

Petitioner submitted the perverted records from DHS/ICE to court with the hope that the court might be able to discern the malicious perversion of a deliberate cause of action of the prosecutor in collaboration with ICE (Docket no. 15 at 24, Exhibit A as compared to Exhibit C of Petitioner's List of Documents). The Federal Magistrate erred or neglected her duty or abused her discretion for properly analyzed the record consistent with facts (*United States v Watson*, 466 F.2d 549 (1972, CA5 Fla) ("It is even the judge's duty to make pertinent inquiries when it becomes necessary to bring out matters that have been insufficiently or confusingly developed by counsel"). Petitioner respectfully requests that a thorough and sincere look into Exhibit A and Exhibit C to compare and contrast should be given a fair consideration so as to discern the perverse intent of the prosecutor. Rachel Karceski (prosecutor) and Durye Hassan (ICE agent who issued the "fictitious" detainer while Petitioner was not in any penal confinement) did conspire and interfere to violate Petitioner's rights.

According to the Black's law Dictionary, a detainer is a writ authorizing a prison official to continue holding a prisoner in custody. In the light of the definitive description, a detainer could not have been issued for a person who was not in prison (Docket no. 15, Exhibit G). Petitioner in that manner asserts that even before his erroneous conviction the ICE has already conspired with the state officials to deport Petitioner because he had exercised his constitutional right to challenge the abuse, malpractice, and misconduct of unscrupulous public officials. Such agreement among federal and State officials to commit an unlawful act, coupled with intent to achieve objective of the agreement is a serious infringement upon Petitioner's rights by government officials requiring the protection of due process.

There was no support for finding of probable cause for the issuance of a writ authorizing a prison official to continue holding an individual not already in custody and Petitioner's arrest and detention under the authority of such warrant violates his constitutional rights under Fourth, Fifth, and Fourteenth Amendments. A conspiracy between DHS/ICE (Dyrue Hassan, Eloy Huerta, Scott Beemar, etc.) and State officials (Rachel Karceski and her gang) to mandatorily detained Petitioner was designed to thwart him from resisting improper deportation. The fact that an individual is detained at the behest of a State official, supplying inaccurate information through conspiracy and the federal officials' use of fraudulent court processes to achieve a result, which in itself, is unlawful, creates serious constitutional concerns about such detention.

Because Petitioner's has no conviction that comport him to be subject to the mandatory provision of INA § 236(c), and the Magistrate Judge says Petitioner has six conviction not supported by the record, the district court erred or abused its discretion or neglected its duty. Because the judge erred in grating Respondents' motion to dismiss, the decision should rescind.

## VIII. CONCLUSION

Because Petitioner demonstrates that not only was his rights violated in the states, but the state conspired with Respondents to detained him, Petitioner respectfully request that this Honorable Court review the record and the circumstances surrounding the case in its entirety, overturn the decision of the District Court, and grant his the relief sought. In the alternative, Petitioner respectfully requests that this Court remand the case for clarification of the record on the issue of government to provide the required convictions.

By virtue of his lack of resources as a *Pro Se* litigant, Petitioner has not had an opportunity to adequately develop the record.

Dated on this day 28th of October 28, 2010.


Respectfully submitted


KuJoe Bonsafo Agyei-Kodie

A72732130P

810 Commerce Street

Karnes City, TX 78118

## VIII. CERTIFICATE OF SERVICE

I, KuJoe Bonsafo Agyei-Kodie, hereby certify that I served a copy of the Appellate Brief

for extra time on the following persons:

John E. Murphy

United States Attorney

Garry L. Anderson

Assistant United States Attorney

601 NW Loop 410, Suite 600

San Antonio, Texas 78216

Attorneys for Respondent

by first class mail, postage pre-paid.

Dated this 28th day of October 2010.

Respectfully submitted,

KuJoe Agyei-Kodie

A72732130P

810 Commerce Street

Karnes City, TX 78118

## IX.  CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

[✓] this brief contains 13,077 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

[ ] this brief uses a monospaced typeface and contains [state the number of] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ ] this brief has been prepared in a proportionally spaced typeface using [state name and version of word processing program] in [state font size and name of type style], or

[ ] this brief has been prepared in a monospaced typeface using [state name and version of word processing program] with [state number of characters per inch and name of type style].

Respectfully submitted,

KuJoe Bonsafo Agyei-Kodie

A72732130P

810 Commerce Street

Karnes City, TX 78118